# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

SYSCO FOOD SERVICES OF EASTERN
WISCONSIN, LLC,

        Plaintiff,

     v.                                Case No. 06-C-526

EMILIO ZICCARELLI and
ANTHONY DEBARTOLO,

        Defendants.

---

## DECISION AND ORDER

---

### I.  BACKGROUND

This action was commenced on April 27, 2006, when the plaintiff, SYSCO Food Services of Eastern Wisconsin, LLC ("SYSCO"), filed a complaint naming Emilio Ziccarelli ("Ziccarelli") and Anthony DeBartolo ("DeBartolo") as defendants.   SYSCO asserts four claims against the defendants: (1) breach of contract, (2) breach of the obligation of good faith and fair dealing, (3) conspiracy, and (4) tortious interference with contract and with prospective business or economic advantage.  Although SYSCO asserts four claims, it is not unreasonable to state that at the heart of their complaint are employment agreements that were signed by each of the defendants at the time they were hired by SYSCO (or shortly thereafter).

More precisely, on October 28, 2002, Ziccarelli signed, and on January 22, 2001, DeBartolo signed identical "Sales Representative's Employment Agreement[s]" (the "Agreements").  Each of the Agreements includes the following provision number 2:

2. <u>Covenants of Employee.</u> Employee hereby agrees that:

a. During the period of employment hereunder, Employee shall faithfully devote his/her best efforts and entire time during usual business hours to advance the interests of the Company and shall not, directly or indirectly, on his/her own account, or as agent, employee, partner, major stockholder or otherwise, engage in the sale, or distribution of, or in the solicitation of orders for, any product or service, other than as a Sales Representative of the Company pursuant to this Agreement.

b. For the period of <u>twelve (12)</u> months following the termination or cessation of Employee's employment (for whatever reason or no reason and whether such termination or cessation occurs at Employee's instance or at the instance of the Company), Employee shall not, without prior written consent of the Company, directly or indirectly, on his/her own account, or as agent, employee, partner, major stockholder or otherwise, engage in any of the following activities with respect to any product or service sold by the Company or thereafter during the period of this covenant, or any product or service similar to, competitive with, or intended to compete with any such product or service:

1. In any area, solicit, sell to, or contact with a view to selling any such product or service, any person, firm, or company from whom Employee solicited any order or to whom Employee sold any product or service or otherwise dealt with on behalf of the Company at any time during the year preceding termination or cessation of Employee's employment with the Company.

c. During his/her employment and at all times thereafter, Employee shall treat as confidential any information obtained by him/her relating to the customers of the Company or its business, products, techniques, methods, price books, plans or policies; and shall not during his employment or at any time thereafter disclose such information in whole or in part to any person, firm or corporation for any reason or purpose whatsoever, or use such information in any way or in any capacity other than as an employee of the Company in furtherance of its interests. Upon the termination or cessation of employment hereunder, or sooner if so required by the Company, Employee shall return any and all literature, documents, data, information, order forms, memoranda, correspondence, customer and prospective customer lists, customer's orders, records and cards acquired, compiled, or coming to Employee's knowledge or custody in connection with his/her activities as such Employee, and all machines, parts, equipment and other materials received by Employee from the Company or from any of its customers in connection with such activities.

According to SYSCO's complaint, Ziccarelli and DeBartolo have both left the employ of

SYSCO and are currently working for Roma of Minnesota, a division of VISTAR Corporation

2

("Roma"). Roma is one of SYSCO's competitors. More significantly, however, SYSCO alleges that Ziccarelli and DeBartolo "following their resignations from SYSCO and upon information and belief, devised and implemented an 'account swapping' scheme under which Defendant DeBartolo contacted Defendant Ziccarelli's former SYSCO customer accounts and under which Defendant Ziccarelli contacted Defendant DeBartolo's former SYSCO customer accounts." (Compl. at ¶ 23.) According to SYSCO, such conduct violates section 2(b)(1) of their respective Employment Agreements. Consequently, SYSCO seeks a preliminary injunction precluding each of the defendants and all those acting in concert or participation with them,

> from directly or indirectly, on his/her own account, or as agent, employee, partner, major stockholder or otherwise, engaging in the following conduct with respect to any product or service sold by SYSCO or any product or service similar to, competitive with, or intended to compete with any such product or service:
>
> In any area, solicit, sell to, or contact with a view to selling any such product or service, any person, firm, or company from whom Defendants solicited any order or to whom Defendants sold any product or service or otherwise dealt with on behalf of SYSCO at any time during the period from March 11, 2005 through March 10, 2006 [for DeBartolo and from March 25, 2005 through March 24, 2006 for Ziccarelli].

(Compl. at ¶ 51 A and B.)

On June 2, 2006, the court conducted a scheduling conference with the parties. At that time, *inter alia*, the court granted in part and denied in part as moot the plaintiff's Rule 7.4 motion for accelerated discovery and to schedule a hearing on its motion for preliminary injunction. The court granted in part and denied in part the defendants' Rule 7.4 motion to stay briefing on the plaintiff's motion for preliminary injunction or for an extension of time to respond; the defendants were ordered to file their response on or before June 9, 2006 and the plaintiff was ordered to file its reply on or before June 23, 2006. The court ordered that briefing on the defendants' motion to dismiss proceed

according to the local rules. The court also ordered that a hearing on the plaintiff's motion for preliminary injunction would be conducted on July 10, 2006.

Since the June 2, 2006, scheduling conference, the parties have submitted their respective briefs on the plaintiff's motion for preliminary injunction and on the defendants' motion to dismiss. After due consideration of the parties' respective positions as set forth in their written submissions, and for the reasons which follow, the defendants' motion to dismiss will be granted in part and denied in part. The plaintiff's motion for preliminary injunction will be denied.

## II. DISCUSSION

A motion pursuant to Rule 12(b)(6), Fed. R. Civ. P., requires the court to decide whether the plaintiff's pleadings actually state a claim upon which relief can be granted. For the purposes of a motion to dismiss, all factual allegations of the complaint are taken as true. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *Eison v. McCoy*, 146 F.3d 468, 470 (7th Cir. 1998). Such allegations must be viewed liberally and in the light most favorable to the plaintiff. *Harrell v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999). "'[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 526 (7th Cir. 1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). However, the court is not required to ignore any facts alleged in the complaint that undermine the plaintiff's claim or to assign weight to unsupported conclusions of law. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir. 1988).

4

**A. Enforceability of the Non-Solicitation Covenant**

The defendants' motion to dismiss is predicated on the proposition that section 2(b)(1) of the Agreements (the non-solicitation covenant) is unenforceable under Wisconsin law. Indeed, the parties agree that Wisconsin law is to be applied in assessing the reasonableness, and thus the enforceability, of the non-solicitation covenant. In that connection, Wis. Stat. § 103.465 reads as follows:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

"[C]ovenants not to compete are generally disfavored in the law." *Equity Enterprises, Inc. v. Milosch*, 247 Wis. 2d 172, 183, 633 N.W.2d 662, 668 (Wis. Ct. App. 2001). "Wisconsin law favors the mobility of workers; therefore, a contract that operates to restrict trade or competition is prima facie suspect and will be liberally construed in favor of the employee." *Mutual Service Casualty Ins. Co. v. Brass*, 242 Wis. 2d 733, 739, 625 N.W.2d 648, 652 (Wis. Ct. App. 2001). "Such restrictions must withstand close scrutiny to pass legal muster as being reasonable; they will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires." *Equity Enterprises*, 247 Wis. 2d at 183, 633 N.W.2d at 668. (citing *Streiff v. Am. Family Mut. Ins. Co.*, 118 Wis. 2d 602, 611, 348 N.W.2d 505 (1984)).

For a covenant not to compete to be valid it must: (1) be necessary for the protection of the employer or principal; (2) provide a reasonable time restriction; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive to the employee; and (5) not be contrary to public policy.

5

*Pollack v. Calimag*, 157 Wis.2d 222, 237, 458 N.W.2d 591, 598 (Wis. Ct. App. 1990); *see also Chuck Wagon Catering v. Raduege*, 88 Wis. 2d 740, 751, 277 N.W.2d 787, 792 (Wis. 1979). Furthermore, "reasonably necessary for the protection of the employer or principal" has been interpreted to mean "reasonably necessary to protect" the employer's "legitimate business interests." *Equity Enterprises*, 247 Wis. 2d at 186 n.4, 633 N.W.2d at 670. In this regard, an employer is not entitled to protection from "legitimate and ordinary competition of the type that a stranger could give." *Pollack*, 157 Wis.2d at 237, 458 N.W.2d at 598. However, an employer might be entitled to reasonable protection from interference with its customer relationships. *Id.*; *Chuck Wagon*, 88 Wis. 2d at 751-52, 277 N.W.2d at 792.

There is substantial case law applying the principles set forth in Wis. Stat. § 103.465 to varied factual scenarios. In support of their argument that the non-solicitation covenant is reasonable the defendants rely principally upon *Farm Credit Services of North Central Wisconsin, ACA v. Wysocki*, 243 Wis. 2d 305, 627 N.W.2d 444 (Wis. 2001) and *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton*, 101 Wis. 2d 460, 304 N.W.2d 752 (Wis. 1981).

In *Farm Credit*, the non-solicitation covenant read as follows:

> If the Employee ceases to be a PCA Employee, for any reason, the Employee shall not, for a period of one year immediately following the date of separation from PCA, directly or indirectly, engage in the business of tax preparation, tax consultation, bookkeeping, or accounting, or any other duties performed as a tax consultant for PCA with the person(s) [sic] the Employee consulted or serviced in performance of his/her consultant duties at any time during the one year immediately prior to the date of separation.

*Farm Credit*, 243 Wis. 2d at 310, 627 N.W.2d at 446. The circuit court, affirmed by the court of appeals, granted summary judgment in favor of the defendant, the former employee. The Wisconsin Supreme Court reversed, ruling that it could not conclude that such a covenant was *per se* invalid as

6

a matter of law. Instead, the Court ruled that a factual, "totality of the circumstances" analysis was necessary in order to determine whether the covenant not to compete was reasonable under § 103.465. Thus, the case was remanded to the circuit court to develop an evidentiary record on the question of the reasonableness of the covenant. *Id.* at 316-17, 627 N.W.2d at 449-50.

In *Rollins Burdick*, the non-solicitation covenant read as follows:

> If Employee terminates his employment with Agency for any reason or if Agency terminates his employment for cause, Employee agrees that he will not, directly or indirectly . . . for a period which is the lesser of (i) two years or (ii) Employee's period of employment from the date of this Agreement until termination, solicit, contact or otherwise do any competitive business with [an individual or entity] who was a customer or client of Agency during a period which is the lesser of (i) two years or (ii) Employee's period of employment from the date of this Agreement until termination.

*Rollins Burdick*, 101 Wis. 2d at 463, 304 N.W.2d at 753. The Supreme Court identified the principal issue in the case to be "whether the instant agreements are invalid per se because they purport to prohibit Hamilton and Hays from soliciting even RBH clients whom they had not serviced and with whom they had no contact." *Id.* at 467, 304 N.W.2d at 755. The Court reversed the circuit court and appellate court decisions dismissing the employer's action to enforce the covenant and concluded that the ultimate issue of whether the agreements were reasonable turned on a "totality of the facts and circumstances" which required the development of an evidentiary record. The court stated:

> A flat rule invalidating all restrictive covenants whose scope exceeded a former employee's actual customer contact would amount to a declaration that it is never reasonably necessary to protect an employer against the improper use of information about customers with whom the employee did not have actual contact. But, as we have indicated, what is reasonable varies from case to case, and what may be unreasonable in one instance may be very reasonable in another. Thus a per se rule offends the notion that the validity of a restrictive covenant is to be established by examination of the particular circumstances which surround it. Whether the determination of the reasonableness of a noncompetition agreement is characterized

7

as a question of law or one of fact, it still remains one which can be made only upon a consideration of factual matters.

*Id*. at 468, 304 N.W.2d at 756 (citation omitted).

SYSCO argues that "[t]he non-solicitation covenants that Defendants entered into with SYSCO are similar to the covenant at issue in *Farm Credit Services* and are, in fact, more narrow than the covenant at issue in *Rollins Burdick* where the covenant extended for two years and precluded solicitation of all customers of the employer. Conversely, the covenants at issue here only preclude Defendants from doing business with customers they solicited, sold to or dealt with during the year preceding their resignation from SYSCO." (Pl's Resp. to Mot. to Dismiss at 8 (emphasis omitted).) Thus, SYSCO maintains that the defendants' motion to dismiss must be denied and SYSCO's motion for preliminary injunction must proceed forward.

In support of their position that the plaintiff's complaint (or at least those claims which are predicated on the non-solicitation covenants) should be dismissed, the defendants rely in part upon an unpublished decision from the United States District Court for the Western District of Wisconsin, to wit, *JT Packard & Assocs., Inc. v. Smith*, No. 05-C-0169-C, 2005 U.S. Dist. LEXIS 7658 (W.D. Wis. Apr. 25, 2005). In *JT Packard* the plaintiff, seeking to enforce a non-solicitation agreement which its former employee had signed, moved for a preliminary injunction against the former employee (Smith) and his employer (On Power) to restrain them from allowing Smith "to solicit any new customers for defendant On Power that were former customers or potential customers of plaintiff, even if the new customers were ones that had followed defendant to plaintiff from his previous job or were 'potential' customers that had no intention of becoming actual customers of

plaintiff." *JT Packard*, at *3. The court described the non-solicitation agreement as being one in which the former employee

> agreed that for one year after leaving plaintiff's employment, he would not solicit any customer of plaintiff with whom he had had contact during the year preceding his termination and that "customer" would include anyone that had purchased any goods or services from plaintiff within the year prior to his termination and any potential customer that defendant Smith had solicited on plaintiff's behalf within that year.

*Id*. at *2. The district court denied the plaintiff's motion for preliminary injunction, concluding, in part, "that plaintiff does not have a realistic chance of prevailing ultimately on its claim that its non-solicitation agreement is reasonable and necessary for its protection and that defendants have violated the agreement." *Id*. at *10. More precisely, the court stated, *inter alia*:

> Assuming that § 103.465 applies to the non-solicitation agreement, I am persuaded that Wisconsin courts would not find the restrictions on that agreement "reasonably necessary for the protection of the employer or principal." § 103.465. The agreement bars defendant Smith from soliciting any customer of plaintiff with which defendant had contact within one year of his termination, which includes any potential customer that defendant had solicited. This is overbroad because it restricts defendant Smith from servicing any customer he tried but failed to solicit while he was working for plaintiff, even if that potential customer went to defendant On Power while Smith was still working for plaintiff or refused to become a customer of plaintiff despite plaintiff's best efforts.

*Id*. In the view of Ziccarelli and DeBartolo, the holding of *JT Packard* is directly applicable to the case at bar and supports their motion to dismiss. The defendants argue that

> [i]n the instant case, the non-solicitation provision is even broader than the one struck down by the *JT Packard* court. SYSCO seeks to enforce a non-solicitation provision that precludes Defendants from soliciting three categories of people: 1. any person from whom Defendant solicited any order; or 2. any person to whom Defendants sold any product; or 3. any person with whom Defendants otherwise dealt with on behalf of SYSCO. The *JT Packard* court found category # 1 overly broad and unenforceable. Category # 3 is even broader than category # 1 and further warrants the conclusion that the non-solicitation provision is overly broad.

(Defs' Br. in Opp. to Mot. for Prelim. Inj. at 20 (citation omitted).)

The decision in *JT Packard* was not issued on a motion to dismiss. Instead, the *JT Packard* decision was issued on a motion for preliminary injunction. Such being the case, the decision in *JT Packard* was not on the merits of the enforceability of the non-solicitation agreement. Rather, to the extent that the court addressed the enforceability of the non-solicitation agreement, it was only in the context of considering whether the plaintiff's claim had a reasonable likelihood of success on the merits. Nevertheless, the *JT Packard* court's analysis is to be given due consideration, given that the court applied Wisconsin law, citing to and relying upon *Equity Enterprises* and *Mutual Service Casualty*, and given that, like the plaintiff in *JT Packard*, SYSCO is seeking a preliminary injunction predicated on non-solicitation agreements signed by the defendants.

In *Equity Enterprises*, the court reviewed a non-compete contract provision and found it to be unenforceable. The provision, *inter alia*, prevented the former employee from soliciting any of the plaintiff's customers for a period of eighteen months. The term "customer" was defined to include "any customer of [the plaintiff] . . . with whom Employee transacted business or whom Employee serviced on behalf of [the plaintiff] during any part of Employee's employment." *Equity Enterprises*, 247 Wis. 2d at 179, 633 N.W.2d at 666. In analyzing the non-solicitation language, the court found that the provision restricted the employee from soliciting any of the plaintiff's customers for a period of eighteen months after termination, but was silent as to any territorial parameters which the employee had to abide by, thereby implying a nationwide restriction. *Id*. at 186, 633 N.W.2d at 670. The court stated:

> Wisconsin Stat.§ 103.465 tells us that a covenant not to compete "within a *specified territory* and during a *specified time* is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal." *Id.* (emphasis added). Without any specified territory, section 5.1 is void. Like the unenforceable covenant in section 5i(4) of *Streiff,* the implication in section 5.1 is that

10

Equable means to restrict its terminated agents from employment opportunities in the insurance and securities industry throughout this country. *See Streiff,* 118 Wis. 2d at 607, 348 N.W.2d 505. Therefore, because section 5.1 does not contain any geographical restrictions, section 5.1 fails and the jury finding that it was reasonable is an error of law.

*Id*.

In *Mutual Service Casualty* the court reviewed several provisions of a non-compete agreement and found that they were overbroad and therefore unenforceable. In particular, the court stated

Similar to the restrictive provisions in *Streiff*, sections 13.E.(2) and 14 provide that Brass must forfeit all termination compensation that remains unpaid if he solicits *any MSI policyholders*. This indicates that Brass is to have nothing to do with MSI policyholders, known or unknown, in Wisconsin or anywhere else in the world. Thus, in both sections 13.E.(2) and 14, the geographical limitation is over broad and fails under Wis. Stat. § 103.465.

*Mutual Service Casualty*, 242 Wis. 2d at 743, 625 N.W.2d at 654.

At the outset, I note the procedural posture of this case differs from many of the cited cases. The motions before this court are a motion for preliminary injunction and a motion to dismiss. As such, the factual record at this point is somewhat limited (although the parties have filed affidavits in support of their respective positions on the issues). The Wisconsin Supreme Court has held that the reasonableness of a restrictive covenant "can be made only upon a consideration of factual matters." *Rollins Burdick*, 101 Wis. 2d at 468, 304 N.W.2d at 756. The *Rollins Burdick* court was unwilling to declare that a restrictive covenant can never, under any circumstances, prohibit a former employee from contacting the employer's customers with which the employee did not have actual contact when employed by the employer. Although such covenants had been found unenforceable

11

in past cases, the court stated that "what is reasonable varies from case to case, and what may be unreasonable in one instance may be very reasonable in another." *Id.*

Nevertheless, dismissal would still be appropriate if, accepting all factual allegations in SYSCO's complaint as true, and viewing such allegations in the light most favorable to SYSCO, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 526 (7th Cir. 1999). Moreover, although I must view factual allegations in the light most favorable to the SYSCO, I am not required to ignore facts alleged in the complaint that undermine SYSCO's claims. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir. 1988).

To reiterate, the non-solicitation covenant in the instant case restricts the defendants, for a period or twelve (12) months following the termination or cessation of their employment, from engaging in any of the following activities with respect to any product or service sold by the plaintiff:

> In any area, solicit, sell to, or contact with a view to selling any such product or service, any person, firm, or company from whom Employee solicited any order or to whom Employee sold any product or service or otherwise dealt with on behalf of the Company at any time during the year preceding termination or cessation of Employee's employment with the Company.

(Agreement at ¶2.b.1.)

When viewed in light of Wis. Stat. § 103.465, the 5 factor test set out in *Pollack v. Calimag*,[1] and the case law cited above, several problems are presented by the covenant. First, the phrase "[i]n any area" would seem to refer to any <u>geographic</u> area. If it does (and there is no other plausible

---

[1]

The restrictions must (1) be necessary for the protection of the employer or principal; (2) provide a reasonable time restriction; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive to the employee; and (5) not be contrary to public policy. *Pollack v. Calimag*, 157 Wis.2d 222, 237, 458 N.W.2d 591, 598 (Wis. Ct. App. 1990).

12

meaning for such phrase, given that the immediately preceding paragraph states with particularity that the agreement covers all product or service sold by the plaintiff), then the non-solicitation covenant is immediately suspect because it fails to define a specific territory. Perhaps this alone, however, is not fatal to the covenant. Wisconsin courts have recognized that if the restrictive covenant is otherwise narrowly tailored, the lack of a geographic limitation might be excused. *See Rollins Burdick*, 101 Wis. 2d at 465-66, 304 N.W.2d at 755 (holding that a restriction expressed in terms of particular clients or customers rather than geographic location might better serve the needs of both the employee and employer and be valid); *Chuck Wagon*, 88 Wis. 2d at 754, 227 N.W.2d at 793 ("In Wisconsin a covenant is considered reasonable as to territory if . . . it is limited to the route or customers defendant actually services."). However, as will become apparent, the covenant at hand is not narrowly tailored in the manner contemplated by *Rollins Burdick* and *Chuck Wagon*.

Second, the non-solicitation covenant prohibits either defendant from soliciting, selling to, or contacting with a view to selling any product or service to any person, firm or company *from whom they solicited an order*, regardless of whether they ever sold anything to them. In other words, not unlike in *JT Packard,* the instant non-solicitation covenant prohibits the defendants from doing any business with those who, for whatever reason and despite the best efforts of the defendants, did not become customers of SYSCO. That this is the meaning of this portion of the non-solicitation covenant is rendered clear by the fact that the defendants are also prohibited from soliciting, selling to or contacting with a view to selling "any person, firm, or company . . . to whom [they] sold any product or service." Stated another way, the non-solicitation covenant prohibits the defendants from doing business, not only with SYSCO's customers, but also with anyone with whom they tried to do business on behalf of SYSCO, but who (for whatever reason) did not become SYSCO customers.

Case 2:06-cv-00526-WEC   Filed 06/28/06   Page 13 of 27   Document 42

This might even include long-standing Roma customers, should the defendants have unsuccessfully solicited them during the last year of their tenure with SYSCO.

SYSCO argues that "from whom they solicited an order" should be given a much narrower construction because that term has a particular meaning relating to businesses that have filled out a credit application with SYSCO. Under SYSCO's preferred construction, in order to "solicit[] an order" from any person, firm or company, that person or entity would have to essentially already be a customer, or something very close to it. (Pl.'s Reply Br. Supporting Mot. for Prelim. Inj. at 12.) SYSCO's reading of the covenant ignores the fact that restrictive covenants must be "liberally construed in favor of the employee." *Mutual Service Casualty*, 242 Wis. 2d at 738, 625 N.W.2d at 652. In any event, even if the term were construed as SYSCO suggests it should be construed, individuals or businesses who were solicited, but did not order anything, would nevertheless fall into the "dealt with" category discussed below. And the same problems would persist: the defendants would still be prohibited from soliciting persons, firms or companies while at Roma that they unsuccessfully solicited during their final year at SYSCO.

Finally, the non-solicitation covenant prohibits either defendant from soliciting, selling to, or contacting with a view to selling any product or service to any person, firm or company that the defendants "otherwise dealt with on behalf of [SYSCO]." This phrase is so broad as to capture within its clutches any person with whom either defendant may have done so little as merely spoken to on the telephone while working for SYSCO.

Again, SYSCO argues for a narrower construction of that term. SYSCO cites to *Farm Credit Services* for the proposition that "the language must be given the construction that minimizes the restraint on trade." (Pl.'s Reply Br. Supporting Mot. for Prelim. Inj. at 13.) To be sure, the *Farm*

14

*Credit Services* court stated that restrictive covenants, "will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires." *Farm Credit Services*, 627 N.W.2d at 312-13, 627 N.W.2d at 447. But to apply that language from *Farm Credit Services* as SYSCO urges would be to completely invert the meaning of the passage. Immediately surrounding the quoted language, the *Farm Credit Services* court stated that restrictive covenants are "prima facie suspect," and "are to be construed in favor of the employee." *Id.* SYSCO's preferred interpretation would essentially misconstrue *Farm Credit Services* (and other cases that use the same language) to mean that an overly-broad, and therefore void restrictive covenant, should be interpreted more narrowly so as to render it enforceable. In my opinion, that was not the court's intent. Instead, when the court stated that covenants "will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires," it had in mind that <u>valid</u> restrictions should be interpreted narrowly so that less conduct is restricted. The court did not mean that overly-broad and invalid restraints should be interpreted more narrowly. Indeed, such meaning would run counter to the immediately following phrase that restrictive covenants "are to be construed in favor of the employee."

SYSCO also points to canons of contract construction for the proposition that the "otherwise dealt with" provision is a "catch-all provision" that should be limited in the same manner as the provisions surrounding it, i.e., the "solicited any order" or "sold any product or service" provisions. SYSCO would have the court interpret the term "otherwise dealt with" to be limited to dealings with "fully qualified customers or potential customers." Examples would be activities such as filling customer orders or providing customer service. (Pl.'s Reply Br. Supporting Mot. for Prelim. Inj. at 13.) Once again, SYSCO's proposed interpretation ignores the fact that Wisconsin courts have

15

consistently held that restrictive covenants are not favored by the law and are to be construed in favor of the employee. On its face, "otherwise dealt with" is an extremely broad term that encompasses all sorts of interactions. I decline to construe the term in an extremely narrow fashion in order to save an otherwise void restriction on competition. To do so would directly contravene consistent holdings of the Wisconsin courts that restrictive covenants should be "liberally construed in favor of the employee."

In the end, the non-solicitation covenant at hand violates four of the five requirements identified by the *Pollack* court. First, and most importantly, the restrictions are too broad to be considered necessary for the protection of the SYSCO. While SYSCO may have a legitimate interest in protecting its customer relationships, it does not have a legitimate interest in limiting "ordinary competition." The restrictive covenant at hand does much more than protect SYSCO's customer relationships. By prohibiting the defendants from soliciting business from any person, firm or company whom they "solicited any order" from or "dealt with" on behalf of SYSCO, the covenant prohibits the defendants from conduct that could only be described as ordinary competition, i.e., attempting to do business with a market that SYSCO would like to, but has yet to, capture.

Next, as discussed above, the covenant does not provide a reasonable territorial limit or, in the alternative, otherwise limit itself in a comparable way. The covenant is also overly harsh and oppressive toward the defendants for the simple reason that it is not necessary to protect SYSCO. Simply stated, the defendants would be unnecessarily restricted in employment opportunities. They might even be effectively prohibited from being sales representatives for Roma altogether because, as discussed above, the broadness of the restrictions might very well preclude them from servicing long-standing Roma customers who never bought anything from SYSCO, but were solicited or "dealt

16

with" by the defendants during their final year of employment with SYSCO. And finally, the covenant is contrary to public policy because, in its over-breadth, it cuts against Wisconsin policy favoring the mobility of workers and competition in general.

Indeed, the overly broad nature of the non-solicitation covenant in the instant case becomes quite apparent when it is contrasted with the non-solicitation covenant examined by the court in *Sysco Food Services of Atlanta, Inc. v Chupp*, 484 S.E.2d 323 (Ga. Ct. App. 1997). In that case, which also involved SYSCO (or at least a related corporation), the non-solicitation covenant read as follows:

> Employee covenants and agrees that during his employment for the company and for a period of one (1) year following the termination of such employment for any reason, within the territory he will not, without the prior written consent of the company, either directly or indirectly, on his own behalf or in the service or on behalf of others, solicit or attempt to divert or appropriate to a competing business, any customer of the company having an office or place of business within the territory and to whom the company sold or provided any products [or] services and with whom the employee dealt on behalf of the company at any time during the 12 months immediately preceding termination of his employment hereunder.

*Chupp*, 484 S.E.2d at 324. The non-solicitation covenant is limited to "customer[s] of the company having an office or place of business within the territory <u>and</u> to whom the company sold or provided any products [or] services <u>and</u> with whom the employee dealt." *Id*. (emphasis added.) Simply stated, unlike the non-solicitation covenant in the case at bar, the *Chupp* covenant was limited to a territory; it was limited to "customers" of SYSCO to whom the company actually sold products or goods; and, significantly, it was limited to those "customers" with whom the defendant had actually dealt.

By contrast, the Ziccarelli/DeBarrtolo non-solicitation covenant is not limited to any geographic territory. It is also not limited to customers, but rather includes any person, firm or

17

company from whom either defendant solicited an order (even if no sale was made). And it is not limited to <u>customers</u> with whom either Ziccarelli or DeBartolo dealt, but rather includes any person, firm or company with whom they had dealt in any fashion whatsoever. The bottom line is that the non-solicitation covenant in the Ziccarelli and DeBartolo employment agreements is overly broad.

Even so, keeping in mind that the reasonableness of restrictive covenants rests on the "totality of the facts and circumstances" and that "what is reasonable varies from case to case," I should not grant the defendants' motion to dismiss if there exists some set of facts under which the non-solicitation covenant is reasonably necessary for the protection of SYSCO.

According to the complaint, Ziccarelli and DeBartolo were sales representatives for SYSCO, Ziccarelli for approximately four years and DeBartolo for approximately five years. (Compl. at ¶¶ 10-11, 13.) Their job duties included "meeting with existing and potential customers to assess their food service needs." (Compl. at ¶ 9.) During that time SYSCO "provided Defendants with lists of customers, introductions to existing customers, customer prospects and assessment of which customers were likely to produce business." (Compl. at ¶ 13.) In addition to contacting customers on their own accounts, the defendants at times covered each others' customer accounts. (Compl. at ¶ 16.)

Even viewing the factual allegations in the complaint in the light most favorable to SYSCO, it is clear that Ziccarelli and DeBartolo would have "dealt with" or solicited orders from many people and businesses on behalf of SYSCO. Some of them would have been SYSCO customers, but others would have been only "potential customers" or "customer prospects." There is no way around the fact that the defendants' duties included going out and soliciting business for SYSCO; they were, after all, sales representatives. When searching for some set of facts under which the plaintiff would

18

entitled to relief, I cannot ignore this stark reality. Given the nature of the defendants' jobs, I am satisfied that "it appears beyond doubt that the plaintiff can prove no set of facts" under which the non-solicitation covenant would be reasonably necessary for the protection of SYSCO. Simply stated, under no circumstances would it be reasonably necessary to protect SYSCO's "legitimate business interests," as opposed to protecting SYSCO from "ordinary competition," to prohibit its former sales representatives from soliciting any person, firm or company whom they solicited or dealt with during their last year with SYSCO, regardless of whether those persons or entities were SYSCO customers. Dismissal of those counts of the complaint which depend on the enforceability of the non-solicitation covenant is therefore warranted.

## B. The Confidentiality Covenant

Aside from the fact that the non-solicitation covenant is overly broad, there is yet another reason why it cannot be enforced. Along with the non-solicitation covenant, the defendants' agreements with SYSCO contained a confidentiality covenant. The confidentiality covenant states:

> c. During his/her employment and at all times thereafter, Employee shall treat as confidential any information obtained by him/her relating to the customers of the Company or its business, products, techniques, methods, price books, plans or policies; and shall not during his employment or at any time thereafter disclose such information in whole or in part to any person, firm or corporation for any reason or purpose whatsoever, or use such information in any way or in any capacity other than as an employee of the Company in furtherance of its interests. Upon the termination or cessation of employment hereunder, or sooner if so required by the Company, Employee shall return any and all literature, documents, data, information, order forms, memoranda, correspondence, customer and prospective customer lists, customer's orders, records and cards acquired, compiled, or coming to Employee's knowledge or custody in connection with his/her activities as such Employee, and all machines, parts, equipment and other materials received by Employee from the Company or from any of its customers in connection with such activities.

19

Among other things, this confidentiality covenant requires the defendants to "treat as confidential any information obtained by him/her relating to the customers of [SYSCO]" and not "disclose such information in whole or in part to any person, firm or corporation for any reason or purpose whatsoever, or use such information in any way or in any capacity other than as an employee of [SYSCO] in furtherance of its interests." (emphasis added) This prohibition covers the time period during which the defendants were employed at SYSCO and "all times thereafter."

Restrictions on the use or disclosure of customer information can properly be the subject of restrictive covenants. *Rollins Burdick*, 101 Wis. 2d at 468-69, 304 N.W.2d at 756. As such, restrictions on disclosing or using customer lists are viewed as restraints on trade and are subject to similar limitations as other covenants not to compete. *See Gary Van Zeeland Talent Inc. v. Sandas*, 84 Wis. 2d 202, 218, 267 N.W.2d 242, 250 (Wis. 1978); *Nalco Chemical Co. v. Hydro Technologies, Inc.*, 984 F.2d 801, 803 (7th Cir. 1993) (Wisconsin law). Moreover, unless the particular customer list qualifies as a trade secret, a confidentiality covenant with an indefinite time span is void and unenforceable. *Nalco*, 984 F.2d at 803.

In Wisconsin,

'[t]rade secret' means information, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply:

1. The information derives independent economic value, actual or potential, from being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

2. The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

Wis. Stat. § 134.90(1)(c). In certain circumstances a customer list might qualify as a trade secret. However, where the names, addresses, and contact persons of a company's customers are readily

Case 2:06-cv-00526-WEC    Filed 06/28/06    Page 20 of 27    Document 42

ascertainable by proper means, a customer list is not a trade secret. *Burbank Grease Services, LLC v. Sokolowski*, 278 Wis. 2d 698, 712, 693 N.W.2d 89, 96 (Wis. Ct. App. 2005) (holding that where potential customers can be readily identified through such common sources as the telephone book, the internet, and trade associations, and contact persons can be ascertained by asking at the business, customer list was not a trade secret); *see also Nalco*, 984 F.2d at 804 (holding that where the target market for products is broad, customer list is not a trade secret under Wisconsin law).

Ziccarelli and DeBartolo were sales representatives for SYSCO in the food service industry. (Compl. at ¶ 9.) As such, their potential customers bear a strong resemblance to those in *Burbank Grease Services*, where most of the customers were restaurants. As was the case in *Burbank*, it would not be difficult to ascertain SYSCO's potential customers (at least the ones the defendants might serve) by looking in a phone book, or to ascertain the contact persons at those places of business by asking for them at the businesses. That being the case, the customer information that is the subject of the confidentiality covenant would not constitute a trade secret.

Because the confidentiality covenant at issue here is for "all times thereafter," it has no time limitation. Therefore, the confidentiality covenant as it pertains to customer information is on its face void and unenforceable. *Nalco*, 984 F.2d at 803; *Gary Van Zeeland*, 84 Wis. 2d at 218, 267 N.W.2d at 250.

Indeed, although the defendants contend that the confidentiality covenant is unenforceable, SYSCO has not presented any argument as to why the confidentiality covenant is enforceable. Instead, SYSCO argues that the confidentiality covenant and the non-solicitation covenant are two separate contract provisions that stand or fall on their own.

21

The defendants argue, on the other hand, that the two covenants are essentially two pieces of the same covenant not to compete, and therefore, if any part of the covenant not to compete is void, none of it can be enforced. This is because of Wisconsin's "no blue pencil rule" codified at Wis. Stat. § 103.465. According to the statute, "[a]ny covenant [not to compete], described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint."

The question then becomes: In light of the fact that the confidentiality covenant is void and unenforceable, does that thereby render the non-solicitation covenant void and unenforceable?

In *Streiff v. American Family Mutual Insurance Co.*, 118 Wis. 2d 602, 348 N.W.2d 505 (Wis. 1984) the Wisconsin Supreme Court considered the ramifications of § 103.465 on an insurance agent's employment agreement which contained two separately numbered provisions, both restraining competition after employment ceased. One provision was an outright restraint on competition and the other provided that if the employee engaged in certain competitive practices, he would lose extended earnings on insurance policies he had sold. *Id*. at 606-07, 348 N.W.2d at 508.

Relying on canons of construction which view restrictions on competition as "prima facie suspect," and requiring restrictions to be "construed in favor of the employee," the *Streiff* court found that the two provisions were indivisible and had to be read together. *Streiff*, 118 Wis. 2d at 611, 348 N.W.2d at 510. "As we read the agreement, [the two provisions] are not distinct, mutually exclusive, independent provisions that come into play in totally different fact situations so that the restraints are divisible." *Id*. at 612, 348 N.W.2d at 510. The court therefore found that because the provisions were indivisible, and one of the provisions was unenforceable, the entire covenant was void and unenforceable. *Id*. at 614-15, 348 N.W.2d at 511. In doing so, the court explicitly left open the

22

question of whether a restraint that is reasonable under § 103.456 could be enforced if a second, separate restraint, was unreasonable. *Id.* at 613, 348 N.W.2d at 511. As far as I can tell, the Wisconsin Courts have never definitively answered that question. In any event, based on my conclusions as set forth below, to decide the instant case does not require that that question be answered.

I start by noting that, as is already clear from what I have stated previously, the two provisions at issue here, the non-solicitation covenant and the confidentiality covenant, are both covenants not to compete governed by § 103.465. The non-solicitation covenant is explicitly so, and the confidentiality covenant forbids the defendants from using information about SYSCO customers "in any way or in any capacity other than as an employee of [SYSCO] in furtherance of its interests." In other words, the confidentiality covenant prohibits the defendants from using information about SYSCO's customers in order to compete against SYSCO.

In fact, when examined closely, the confidentiality covenant prohibits much of the same conduct as the non-solicitation covenant. Under the non-solicitation covenant (were it valid), the defendants could not solicit business from the customers they served during their last year at SYSCO. Under the confidentiality covenant, the defendants would be effectively prohibited from the same conduct. This is because the confidentiality covenant prohibits the defendants from using information they obtained about their customers, i.e., what products they need, who the contact person is, etc., in any way other than for the benefit of SYSCO. Such being the case, it is hard to imagine how the defendants could solicit business from one of their former SYSCO customers without violating the confidentiality covenant. When viewed in this light, it is apparent that the confidentiality covenant and the non-solicitation covenant are intertwined. The provisions are not

23

"mutually exclusive, independent provisions that come into play in totally different fact situations." *Streiff*, 118 Wis. 2d at 612, 348 N.W.2d at 510. Instead, although cast in different frameworks, the two covenants "govern[] several similar types of activities." *Id*. at 613, 348 N.W.2d at 511. Both serve to restrict competition from SYSCO's former employees.

That being said, I conclude that the confidentiality covenant and the non-solicitation covenant are intertwined and inseparable covenants not to compete. Therefore, because the confidentiality covenant is void, § 103.465 prohibits the enforcement of the non-solicitation covenant.

SYSCO's argument to the contrary is unavailing. SYSCO cites *Fields Foundation, Ltd. v. Christensen*, 103 Wis.2d 465, 309 N.W.2d 125 (Wis. Ct. App. 1981) for the proposition that the invalidity of the confidentiality covenant does not affect the validity of the non-solicitation covenant. (Pl.'s Br. on Mot. to Dismiss at 12.) However, in *Fields Foundation*, the court specifically found that the invalid provision in question, a liquidated damages provision, "is not a restraint against competition and . . . the unenforceability of the clause does not affect the balance of the covenant." *Id*. at 477, 309 N.W.2d at 131. Here, I have determined that the confidentiality covenant is a restraint against competition and is intertwined with the non-solicitation covenant. *Fields Foundation* is therefore inapplicable.

For all of the foregoing reasons, the non-solicitation covenant in Ziccarelli and DeBartolo's employment agreements is unenforceable. Because it is unenforceable, it follows that the defendants' motion to dismiss must be granted, at least with respect to those of the plaintiff's claims that are predicated on the non-solicitation covenant, i.e., Counts 1, 2 and 3. Furthermore, because the non-solicitation covenant is unenforceable, the plaintiff's motion for preliminary injunction, which is grounded on the claimed enforceability of the covenant, must also be denied.

The standards for obtaining a preliminary injunction are well established. The moving party is required to demonstrate a likelihood of success on the merits, that it has no adequate remedy at law, and that it will suffer irreparable harm if preliminary relief is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If the moving party can pass this threshold, the court will then consider any irreparable harm a preliminary injunction would cause to the nonmoving party, as well as the consequences to nonparties of granting or denying the requested relief. *Id.* at 11-12. Then, sitting as would a court of equity, the court weighs all of these factors on a sliding scale; the more likely that the plaintiff will succeed on the merits, the less the balance of harms need favor him. *Id.*; *Eli-Lilly & Company v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). Stated in a slightly different way, "[i]n assessing whether a preliminary injunction is warranted, a court must consider whether the party seeking the injunction has demonstrated that: 1) it has a reasonable likelihood of success on the merits of the underlying claim; 2) no adequate remedy at law exists; 3) it will suffer irreparable harm if the preliminary injunction is denied; 4) the irreparable harm the party will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted; and 5) the preliminary injunction will not harm the public interest." *Kiel v. City of Kenosha*, 236 F.3d 814, 815-16 (7th Cir. 2000). Simply stated, because the non-solicitation covenant is unenforceable it follows that the plaintiff has not shown a reasonable likelihood of success on its claims (or at least the first three claims, which rely on the non-solicitation covenant for their viability).

Finally, the defendants argue that Count 4, which alleges tortious interference with contract and with prospective business or economic advantage, should also be dismissed if the non-solicitation covenant is unenforceable. In order to succeed on a tortious interference with a contract

25

claim, the plaintiff must establish that someone "intentionally and improperly interferes with the performance of a contract." *Wausau Medical Center, S.C. v. Asplund*, 182 Wis.2d 274, 297, 514 N.W.2d 34, 44 (Wis. Ct. App. 1994). The defendants argue that if the non-solicitation covenant is void, then there would be nothing improper about their soliciting business from SYSCO customers. But, aside from claiming that the defendants are violating the non-solicitation covenant, SYSCO also alleges that the defendants have improperly interfered with SYSCO's contracts by "threatening to and/or making disparaging comments about SYSCO to SYSCO customers." (Compl. at ¶¶ 48, 24.) At this point, even having determined that the non-solicitation covenant is void, I cannot say that SYSCO could prove no set of facts entitling it to relief under Count 4. The defendants' motion to dismiss as to Count 4 will therefore be denied.

In conclusion, and for all of the foregoing reasons, the defendants' motion to dismiss will be granted in part and denied in part. Specifically, Counts 1, 2, and 3 of the complaint will be dismissed. Furthermore, the plaintiff's motion for preliminary injunction will be denied.

**NOW THEREFORE IT IS ORDERED** that the defendants' motion to dismiss be and hereby is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that Counts 1, 2 and 3 of the Complaint be and hereby are **DISMISSED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for preliminary injunction be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the hearing on the plaintiff's motion for preliminary injunction previously scheduled for July 10, 2006 is **CANCELLED**;

**IT IS FURTHER ORDERED** that the parties be and are hereby relieved from the requirement that they file witness lists and proposed findings of fact and conclusions of law, as set forth in this court's June 2, 2006 order;

**IT IS FURTHER ORDERED** that on July 10, 2006, at 9:30 a.m. (the date and time set for the preliminary injunction hearing) a further scheduling conference will be conducted in Room 253 of the United States Court House, 517 E. Wisconsin Ave., Milwaukee, Wisconsin, to discuss with the parties the steps necessary to further process this case. Parties located over 50 miles from the courthouse may participate by telephone upon request.

**SO ORDERED** this <u>28th</u> day of June 2006, at Milwaukee, Wisconsin.


<u>/s/ William E. Callahan, Jr.</u>
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

27